IN THE UNITED STATED DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY MIDDLETON, : | |
| : | Case No.  1:13-cv-1085-YK-LQ |
| Plaintiff, : | |
| : | (Judge Yvette Kane) |
| v. : | |
| : | |
| UNITED STATES OF AMERICA, : | |
|    et al., : | |
| : | ELECTRONICALLY FILED |
| Defendants. : | |

**BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

The plaintiff, Terry Middleton, through counsel, under M.D. Pa. LR 7.6, 7.8, and 56.1, hereby opposes Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  Plaintiff simultaneously files a separate response to Defendants' Statement of Material Facts together with a Counter Statement of Material Facts pursuant to Local Rule 56.1 and Fed. R. Civ. P. 56.

I.    COUNTER STATEMENT OF CASE

Plaintiff Middleton filed this federal tort action *pro se* on April 10, 2013.  He attached twenty-five exhibits to the Complaint, designated Exhibits A through Y.  (Doc. 1.)  On November 4, 2013, Defendants moved to dismiss or for summary judgment. (Doc. 23.)  On November 7, 2013, Defendants submitted several

sensitive documents and moved to file them under seal. (Docs. 24-27.) Defendants then moved to extend the time to file their supporting brief until after the Court would rule on their motions to seal, and the Court granted that motion on November 18, 2013. (Docs. 30, 31.)

Counsel entered appearance for Middleton on July 22, 2014. The parties then negotiated a stipulation to protect the confidentiality of the sealed documents, and they jointly moved for a protective order on August 4, 2014. (Doc. 44.) On September 10, 2014, the Court granted that motion as well as the motions to seal the sensitive documents, giving Defendants 14 days to file papers in support of their motion to dismiss or for summary judgment. (Docs. 45-50.) Copies of the sensitive documents were mailed to undersigned counsel on September 11, 2014. Defendants timely filed their supporting brief and their statement of facts, with exhibits, on September 24, 2014. (Docs. 52, 53.) On September 25, 2014, Plaintiff moved to extend the time to respond. (Doc. 53.) The Court granted that motion on September 29, 2014. (Doc. 54.) Plaintiff now timely submits this brief in opposition, and he simultaneously files the required response to Defendants' Statement of Material Facts.[1]

---

1. Hereinafter, "CSMF" designates Plaintiff's Response to Defendants' Statement of Material Facts and Counter Statement of Material Facts, which is simultaneously filed. The paragraphs of the CSMF cite and rely upon Exhibits A through Y, appended to the Complaint, as well as Exhibit Z with its attachments, which is a declaration appended to the CSMF. All exhibits are duly verified.

## II.   COUNTER STATEMENT OF FACTS

Middleton was severely beaten by another inmate, Eugene Smith, on the evening of January 6, 2012.  CSMF ¶ 43.  Smith attacked Middleton because Smith knew that Middleton had considerable power over job assignments in the Food Service department at FCI Allenwood, and Smith resented being excluded from the bakery work crew after working in the bakery for one day.  CSMF ¶¶ 44-46, 49, 51, 53, 54.  Middleton was placed at risk of attack by disgruntled inmates because supervisors ordered Middleton to routinely carry out many supervisory tasks, in violation of post orders and other written policies.  CSMF ¶¶ 45-53.  Prison staff are expressly prohibited from giving any inmate authority over another inmate.  CSMF ¶ 47.  Prison staff are expressly prohibited from allowing inmates to prepare out-counts, enter work hours onto time sheets, determine inmates' pay, or sign off on pay sheets.  CSMF ¶¶ 47, 50, 52.  Yet David Nau, the Assistant Food Service Administrator, and other supervisors all routinely ordered Middleton to do those tasks, and they gave him many other responsibilities as well.  CSMF ¶¶ 46, 49, 51, 53.  AFSA Nau even told Middleton to sign Nau's name to the monthly time sheets for inmate workers in the Food Service department.  CSMF ¶ 51.  Although Eugene Smith was never assigned as a Food Service worker, Smith actually worked in the bakery for one day until Middleton discovered that prison staff had failed to follow mandatory work assignment procedures for Smith.  CSMF ¶ 54-55.

On the evening of the attack, Smith was able to enter Middleton's housing unit and to pound on Middleton with fists, knees, and a full soda can for more than ten minutes because W. Walters, the officer in charge of the unit, failed to follow explicit instructions in his post orders. CSMF ¶¶ 57-66. Walters retreated into an office after unlocking the unit doors for the dinnertime movement, rendering himself invisible to entering inmates for more than an hour, even though Walters was explicitly required to make himself highly visible at that time. CSMF ¶¶ 57, 59, 63. Walters could not even see the door from that office; and while he was in that location, he could not physically conduct pat searches as he was required to do. CSMF ¶¶ 58, 60, 62. Contrary to explicit instructions in the post orders, Walters left the unlocked door unsupervised for over an hour, allowing inmates to enter who were not authorized to be in that area. CSMF ¶¶ 57, 60, 61, 64, 65, 66.

Smith assaulted Middleton and severely injured him because Walters neglected to follow mandatory procedures to keep Smith out of the area, because a supervisor irregularly allowed Smith to work in the bakery briefly before Middleton discovered the mistake, and because supervisors made Middleton a target by handing off their own responsibilities to Middleton in violation of explicit policies and mandatory procedures.

## III.   COUNTER STATEMENT OF QUESTIONS

**A. Is the United States the only proper Defendant in an FTCA action?**

**B. Does Defendant's Rule 12(b)(1) jurisdictional challenge fail because Plaintiff shows injury resulting from breaches of mandatory duties that fall outside the discretionary function exception?**

**C. Do disputes over material facts as to the alleged breaches of duty by employees of the United States preclude summary judgment for Defendant at this time?**

**Proposed answer:  <u>AFFIRMATIVE</u> as to all questions.**

## IV.   ARGUMENT

**A. The United States Is The Defendant In This FTCA Action.**

Plaintiff concedes that the United States is the sole proper Defendant in this action under the Federal Tort Claims Act (FTCA).  <u>See</u> Br. in Supp. at 9-10.

**B. The Court Has Jurisdiction Because The Discretionary Function Exception Is Unavailable To Defendant, Whose Employees Caused Plaintiff's Injuries By Violating Explicit, Written, Mandatory Orders.**

    1. <u>This Court has subject-matter jurisdiction in an FTCA action unless the government can show that its agents had some leeway for choice in the actions complained of.</u>

The FTCA bars suit against the United States for actions undertaken by its employees while carrying out their functions in circumstances where they have leeway to use discretion.  28 U.S.C. § 2680(a).  The two-part inquiry to identify such circumstances is set forth in <u>Berkovitz v. United States</u>, 486 U.S. 531, 536-37

(1988), and Defendants correctly recite it.  See Br. in Supp. at 11.  The discretionary function exception applies only when "the challenged conduct involves an element of judgment" and "that judgment is of the kind that the discretionary function exception was designed to shield."  Berkovitz at 536.  Conversely, "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  Id.  Immunity from suit is waived if a federal agency has adopted mandatory procedures and its employees fail to follow them.

The Third Circuit recently applied the Berkovitz test to bar the suit of a child injured at a national park's shore where warning signs were less than explicit about the danger of barracuda bites.  S.R.P. v. United States, 676 F.3d 329 (3d Cir. April 10, 2012).  The court determined that the discretionary function exception applied there because a National Park Service directive was worded broadly enough to allow employees to use their judgment to devise warnings for swimmers.  Id. at 334-35.  But the court cautioned against letting the exception "swallow the FTCA's general waiver of sovereign immunity and frustrate the purpose of the statute."  Id. at 338.  Moreover, the Third Circuit ruled that the government has the burden of proving that the exception applies.  Id. at 333.

Defendants here attempt to distract the Court from the clear precedents of Berkovitz and S.R.P. by proposing that the "legal standard" should be Mortensen

v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884 (3d Cir. 1977).  See Br. in Supp. at 8.  Mortensen analyzed an action under the Sherman Act, which is somewhat analogous to the FTCA in that both statutes grant jurisdiction only upon a factual showing that may require discovery.  See Mortensen at 891-92.  When jurisdiction is challenged early in the proceedings, "it is incumbent upon the trial judge to demand less in the way of jurisdictional proof than would be appropriate at a trial stage."  Id. at 892.  The court in Mortensen found "the intertwined nature of the two sets of facts necessary for jurisdiction and the merits" in the Sherman Act context to "militate against early 12(b)(1) dismissals."  Id. at 897.  Similarly, in the FTCA context, the Third Circuit holds,

> Although a plaintiff bears the burden of establishing that his claims fall within the scope of the FTCA's waiver of the federal government's sovereign immunity (i.e., that the requirements of 28 U.S.C. § 1346(b)(1) are met), the Government has the burden of proving the applicability of the discretionary function exception.

S.R.P. at 333.  The appeals court explains in the margin that,

> absent an explicit statement from the Supreme Court that the plaintiff bears the ultimate burden, we continue to believe that the burden of proving the applicability of the discretionary function exception is most appropriately placed on the Government.  Although the discretionary function exception is jurisdictional on its face, it is analogous to an affirmative defense.  Therefore, just as a plaintiff cannot be expected to disprove every affirmative defense that a defendant could potentially raise, so too should a plaintiff not be expected to disprove every exception to the FTCA.  Moreover, the Government will generally be in the best position to prove facts relevant to the applicability of the discretionary function exception.

S.R.P. at 333 n.2.  Thus, the burden of establishing the discretionary function exception falls squarely on Defendants.

        2.  <u>The duties breached by government employees here far exceed the generic statutory duty to keep federal prisoners safe from harm.</u>

The United States struggles but fails to meet its burden of establishing that the injurious actions of its employees were discretionary.  It urges the Court to overlook all but the broadest of BOP mandates, that is, the BOP's statutory duty to provide for the safekeeping of prisoners.  Br. in Supp. at 12, citing 18 U.S.C. § 4042.  But the BOP's duty does not stop there.  Pursuant to Section 4042(a)(2) and (3), the Federal Bureau of Prisons has promulgated hundreds of mandatory policies, program statements, and operations manuals that lay down specific procedures for staff to follow in virtually every situation that might conceivably develop in a federal prison.  These regulations limit discretion or remove it altogether.  In <u>Berkovitz</u>, the Supreme Court held that

> the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.  In this event, the employee has no rightful option but to adhere to the directive.

486 U.S. at 536.  The Third Circuit recently applied this rule to find that even a sentence in an inmate handbook was sufficient to defeat the government's assertion that the manner of collecting razors after use was discretionary.  <u>Gray v. United States</u>, 486 Fed. App'x 976, 977-79 (3d. Cir. 2012) (not precedential).  When BOP

post orders and program statements provide explicit instructions designed to keep inmates safe, BOP employees have no discretion to disobey those instructions.

Documents that the parties have entered into the record here show that the housing unit officers at FCI Allenwood have the following duties:

- To conduct pat searches of all inmates entering a housing unit during the evening meal time to make sure that no inmates enter who belong in another housing unit.  Specific Post Orders for Unit (1A/2A/3A/4A) Officer, for 5 p.m., Attach. 6 of Lyons Decl., Ex. 3 with Br. in Supp. (SEALED).  See also definitions of "searches" and "shakedowns" in General Post Orders, id. at page 25 of 33.

- To remain highly visible at the door to the housing unit during the times designated for inmates to move between buildings, when the doors are unlocked.  Special Instructions for General Population Housing Units, id. at page 6; see also id. at page 8.

- Not to leave unit entrance doors unsupervised during times designated for inmates to move between buildings.  Id. at page 6.

- To continuously monitor inmate traffic into and out of the housing units during movement times.  Id.

- To prevent inmates from being in any housing unit other than their assigned housing unit.  Id. at page 8.

Record documents also show that other employees at FCI Allenwood have the following duties:

- To include instructions in post orders that "inmates do not have any authority over other inmates" and that "staff are responsible for supervising inmates."  BOP Program Statement 5500.14 at 4, Attach. 4 of Middleton Decl., Ex. Z with CSMF.

- Not to order an inmate to prepare an out-count, and not to allow an inmate to prepare an out-count.  Id. at § 301.2.

- When supervising inmate workers, to personally prepare the Performance Pay Daily Record, form BP-S575, compute hours worked, recommend pay, and sign the paperwork, without delegating an inmate to do those tasks. BOP Program Statement 5251.06 at 9-10, Attach. 4 of Middleton Decl., Ex. Z with CSMF.

- Not to give an inmate an order that could be hazardous to health and safety. BOP Program Statement 3420.11 at 25, Attach. 4 of Middleton Decl., Ex. Z with CSMF.

- To consult "detail cards" and "crew kits" when arranging work rosters, so as to make sure that inmates are in the right place at the right time for work assignments. General Post Orders, pages 10 and 11 of 33, Attach. 6 of Lyons Decl., Ex. 3 with Br. in Supp. (SEALED).

This documentation amply demonstrates that the functions whose neglect led to the injuries alleged in this action are not discretionary in nature. Therefore, Defendants cannot claim the exception provided by 28 U.S.C. § 2680(a).

> 3. There is no rule that exempts the United States from liability whenever one federal prisoner assaults another.

Defendants contend that "courts have consistently held that the discretionary function exception to the FTCA bars claims for injuries caused by other inmates." Br. in Supp. at 14. But that is the result only when the discretionary function exception applies. Obviously, not every inmate-on-inmate attack automatically triggers the exception, as Defendants wrongly contend. See id. On the contrary, if the facts establish that the injury occurred because federal employees neglected to follow mandatory procedures, as happened here, then there is no such bar.

The United States often must defend itself against claims brought by

prisoners under the FTCA. Many are for injuries inflicted by another inmate. Hence, the government invokes a standard litany of cases where its officers used discretion to provide some modicum of protection, but an inmate-on-inmate attack occurred nevertheless. In such cases, the government escapes liability. That litany does not save the government unless its agents acted with discretion.

Defendants rely principally on a non-precedential Third Circuit opinion handed down before the Third Circuit articulated its current analysis of the FTCA's discretionary function exception in S.R.P. v. United States, discussed above. Br. in Supp. at 13-14. See Rinaldi v. United States, No. 1:CV-09-1700, 2010 U.S. Dist. LEXIS 118905 (M.D. Pa. 2010), aff'd, 460 F. App'x 80 (3d Cir. 2012). In a *per curiam* opinion, the Rinaldi panel summarily affirmed the dismissal of a complaint under the FTCA where the prisoner plaintiff cited no regulation beyond the "statutory duty to provide for the 'safekeeping' of inmates, 18 U.S.C. § 4042." 2010 U.S. Dist. LEXIS 118905, at *12; see also 460 F. App'x at 81. Rinaldi is inapposite here, where Middleton points to at least ten specific mandatory instructions that government actors failed to obey.[2]

---

2. Defendants cite no authority requiring this Court to bar an inmate's claim just because the injury is inflicted by another inmate. See Br. in Supp. at 14-15 (citing a dozen cases that are either unreported or from other circuits). The cited cases are also unpersuasive, because they are easily distinguished. In only one of them did the defendant identify a specific mandatory regulation that eliminated discretion, as Middleton has done here; and in that case, the Ninth Circuit *remanded* for that very reason. See Alfrey v. United States, 276 F.3d 557, 559

Negligent conduct that leads to injury of a federal inmate is not rendered "discretionary" every time the injury involves misconduct by another inmate. Middleton shows that federal employees violated specific, mandatory directives. The discretionary function exception is unavailable here. The Court has subject-matter jurisdiction in this matter. The motion should not be granted.

**C.  Plaintiff's Showing Of An Injury Caused By Breaches Of Specific Duties Creates A Dispute Over Matters Of Fact, Precluding Summary Judgment.**

Defendants correctly state the "legal standard" for summary judgment. Br. in Supp. at 18-20. But they fail to meet it. Middleton submits evidence that BOP employees disobeyed numerous mandatory orders, with the foreseeable result that he was brutally assaulted and severely injured. See supra at 9-10, bulleted points.

Defendants aptly recite the four requisite elements of a negligence claim under Pennsylvania law: duty, breach, causation, and injury. Br. in Supp. at 21-22. But again, Defendants pretend that the government actors' only duty is the generic statutory duty to keep federal prisoners safe from harm. See Br. in Supp. at 22. Defendants argue that "18 U.S.C. § 4042 establishes the duty that the BOP has" which means "that the United States must 'exercise reasonable care and

---

(remanding because of "[p]laintiff's claim that the Government negligently failed to discharge a non discretionary duty to perform a 'Central Inmate Monitoring' (CIM) evaluation . . . as to which there are genuine issues of material fact"). Defendants truncate the holding of the Alfrey panel to camouflage how the remand favored the plaintiff. Br. in Supp. at 14.

diligence to protect the prisoner from danger, known to or which might reasonably be apprehended by him'." Id. (incorrectly attributing the quoted language to the statute). In fact, this is a garbled citation of Turner v. Miller, 679 F. Supp. 441 (M.D. Pa. 1987) (Nealon, J.) delimiting the duty of a "jailer." Turner at 442.

However, Turner does not apply here. Unlike Middleton, the plaintiff in Turner did not point to any specific instructions that the federal employees there disobeyed. Hence, Judge Nealon remarked that "this is not a case in which the government failed to provide protection when it had already decided protection was necessary." Turner at 444 (emphasis added). Judge Nealon's remark handily distinguishes the Miller case from Middleton's circumstances some 25 years later. Here, the BOP did indeed anticipate potential dangers arising from unauthorized inmate moves and work assignments and from giving an inmate power over others. So the BOP promulgated specific rules to protect against those specific dangers. Those are the specific duties whose breaches caused Middleton's injuries. The rules themselves attest to the foreseeability of the injury that befell Middleton.[3]

---

3. Two other authorities that Defendants cite on the issue of foreseeability are equally unavailing. See Br. in Supp. at 22-23. In Hossic v. United States, 682 F. Supp. 23 (M.D. Pa. 1987), the plaintiff failed to show that staffing levels were inadequate by any binding standard or regulation. In Michtavi v. United States, No. 4:07-CV-0628, 2009 U.S. Dist. LEXIS 18926 (M.D. Pa. 2009), the plaintiff failed to convince the court that prison guards should have anticipated how other inmates would be able to trick him out of his money, causing him emotional distress. In neither of those cases did a plaintiff point to specific rules meant to avert the very injuries that actually occurred, as Middleton has done here.

Middleton presents evidence of how the breaches of specific duties led to his injuries. The assailant, Eugene Smith, was permitted to work in the bakery for one day because a supervisor took a shortcut around mandatory procedures and placed Smith's name on a work roster where it did not belong. CSMF ¶¶ 54, 55. Smith was furious when he was bumped from the roster, and he blamed Middleton for the disappointment. CSMF ¶¶ 44, 45. Middleton had extensive power to manage many aspects of inmate work in the Food Service department, contrary to BOP policy, and everybody knew it. CSMF ¶¶ 45-53. Smith walked unimpeded into Middleton's housing unit, where he didn't belong, and Smith attacked Middleton savagely. CSMF ¶¶ 43. Had the unit officer been following the post orders, the officer would have intercepted Smith before Smith got a hold of Middleton. CSMF ¶¶ 56-66. Even if Smith managed to sneak past the unit officer, the officer would have been able to intervene to stop Smith's attack on Middleton or lessen its severity if only the officer had been following the post orders to watch the door. CSMF ¶¶ 60, 62, 64, 65. Those failures to follow orders, and several other lapses, led to the savage mauling of Middleton by Smith.

Defendants are wrong to assert that "the record is devoid of any indication that any staff was forewarned." See Br. in Supp. at 23. On the contrary, the record contains the orders designed to avert the specific harm that came to Middleton. Defendants are also wrong to assert that post orders did not dictate where the unit

officer must position himself during inmate movement. See id. at 24. On the contrary, the unit officer had to be visible to entering inmates, and he had to be close enough to the door to pat them down. Defendants suggest the officer merely ducked into an office to use the toilet – for over an hour. But there is no toilet in the office where he sequestered himself. Compare Br. in Supp. at 6 with CSFM ¶¶ 36, 57 and Ex. Z ¶ 26. Defendants further err by asserting that Middleton had no authority in Food Service. See Br. in Supp. at 24. Middleton's power over other inmates was extensive. It is incorrect for Defendants to call the record "undisputed." See id. On the current record, if the Court granted summary judgment, it would have to be in favor of Plaintiff. The motion should be denied.

## V.  CONCLUSION

For the reasons set forth above, the motion should not be granted. The Complaint should not be dismissed for lack of jurisdiction, nor should summary judgment be granted to Defendants on the current record.

                Respectfully submitted,

                **/s/ Marianne Sawicki**
                Marianne Sawicki
                PA No. 313471
                2530 South Blair Avenue
                Huntingdon, PA 16652
                MarianneSawicki@verizon.net
                (814) 506-2636
                FAX  (814) 644-6884

Date:  October 26th, 2014

IN THE UNITED STATED DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY MIDDLETON, : | |
| : | Case No.  1:13-cv-1085-YK-LQ |
| Plaintiff, : | |
| : | (Judge Yvette Kane) |
| v. : | |
| : | |
| UNITED STATES OF AMERICA, : | |
|    et al., : | ELECTRONICALLY FILED |
| : | |
| Defendants. : | |

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2014, an electronic copy of the foregoing Brief in Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment was served on the party below through the electronic case filing system of the Court.

Melissa Swauger, Esquire
U.S. Attorney's Office
228 Walnut Street
Harrisburg, PA 17108
Email: Melissa.Swauger@usdoj.gov

        **/s/ Marianne Sawicki**
Marianne Sawicki
PA No. 313471
Law Office of Marianne Sawicki
2530 South Blair Avenue
Huntingdon, PA 16652
MarianneSawicki@verizon.net
(814) 506-2636
FAX  (814) 644-6884