IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY MIDDLETON,<br>　　　Plaintiff, | Civil No. 1:13-CV-1085 |
| v. | (Kane, J.) |
| UNITED STATES OF AMERICA,<br>　et al.,<br>　　　Defendants. | Filed Electronically |

REPLY BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT

I. Introduction

Middleton filed this Federal Tort Claims Act (FTCA) action against the Bureau of Prisons (BOP) and United States of America, alleging that BOP staff was negligent in allowing him to decide work assignments in the food services department, assigning inmate Smith to the food service department, and not monitoring inmate traffic in and out of his unit prior to him being attacked. (Doc. 1, Complaint, ¶¶23, 25, 37-38.)

Defendants filed a motion to dismiss the complaint because the United States is the only proper party in a FTCA action and this Court lacks subject matter jurisdiction over Middleton's claims due to the

discretionary function exception to the FTCA. Alternatively, defendants moved for summary judgment because the undisputed evidence demonstrates that the United States did not breach its duty to Middleton.

In opposition, Middleton concedes that the BOP should be dismissed from this action and the United States is the only proper defendant here. (Doc. 55 at 5). Middletown argues, however, that the discretionary function does not apply here because the BOP policies regarding monitoring inmate movement and making inmate work assignments lack an element of choice or judgment. (Id. at 8-10.) Middleton's argument lacks merit because he conveniently ignores the language in such policies which specifically state the officers must exercise good judgment and make sound decisions.

In his response to Defendants' statement of material facts, Middleton includes his own counter statement of material facts. (Doc. 56 at ¶¶43-66.) Local Rule 56.1 "does not permit a counter statement of material facts to be filed by the nonmoving party." Chinniah v. East

Pennsboro Twp., 1:CV-08-1330, 2012 WL 2006749, *5 (M.D. Pa. Feb. 29, 2012)(opinion attached).

## II. Argument

**I. Middleton's FTCA claim should be dismissed for lack of subject matter jurisdiction in accordance with Federal Rule of Civil Procedure 12(b)(1).[1]**

As outlined in the United States principle brief, the Supreme Court has adopted a two-part inquiry with respect to the discretionary function. First, the challenged governmental action must be the product of "judgment or choice" in order for the discretionary function exception to apply. Berkovitz v. United States, 486 U.S. 531, 536-37 (1988). Second, the judgment or choice must be based on "considerations of public policy." Id. at 537. The primary focus of the second part is "on the nature of the actions taken and on whether they are susceptible to policy analysis." United States v. Gaubert, 499 U.S. 315, 325 (1991).

---

[1] The United States does not dispute that Middleton bears the burden of demonstrating that his claims fall within the scope of the FTCA, but the United States has the burden of proving that the discretionary function is applicable here. See S.R.P. v. United States, 676 F.3d 329, 333 (3d Cir. 2012).

Middleton argues that the United States cannot meet the first element of the discretionary function exception because BOP staff did not have any element of choice or judgment in monitoring inmate traffic in and out of Middleton's unit. (Doc. 55 at 8-9.) The flaw with Middleton's argument is that he cannot ignore the discretionary language specifically contained in the post orders. The special instructions for general population housing units state:

> [t]hese post orders are designed as a <u>guideline</u> for the officer assigned to this post. They are not meant or intended to describe each and every aspect of the duties and responsibilities of this assignment. Additional duties may be assigned as required by the Operations Lieutenant as the need arises. <u>Each officer assigned to this post is expected to exercise good judgement (sic) and make sound decisions in any and all situations</u>.

(Lyons Decl. (Ex. 3 SEALED), Att. 6 (Special Instructions Post: General Population Housing Units) at 1 (emphasis added).) Additionally, the general post orders provide:

> [i]t is not expected that the information included in the Post Orders will cover every situation a staff member will be confronted with. This is due in part to the fact that each situation has unique characteristics and may place extraordinary demands on staff and the institution itself. Rather, this material is presented with the goal of providing

4

> <u>general guidance and instruction</u> to staff while they are going about their daily assignments at FCI Allenwood.

(<u>Id.</u> at Att. 6 (General Post Orders) at 1 of 33 (emphasis added).) The post orders further state "[a]ll staff are expected to exercise and use good judgment while performing their duties." (<u>Id.</u>) As such, all that is required of the unit officer is to use good judgment and make sound decisions in monitoring his housing unit, which contains approximately 160 inmates, and monitoring inmate movement during permitted moves.

Middleton does not cite to any post order, program statement, or policy that requires the unit officer to stand at a particular location to monitor inmate movement during the 90 minute move. Indeed, there is nothing in the post orders that states an unit officer cannot be in the office at any time during the 90 minute move. (<u>Id.</u> at Att. 6 (General Post Orders, Special Instructions Post: General Population Housing Units, and Specific Post Orders).) Rather, the unit officers have reasonable leeway in deciding where to position themselves during the 90 minute move and there is nothing in the record to indicate that Officer Walters exceeded that leeway on January 6, 2012, when inmate Smith attacked Middleton.

The case of <u>Rich v. United States</u>, 3:13-CV-137, 2014 WL 2778652 (N.D. W.Va. June 19, 2014), is instructive here. At issue in <u>Rich</u> was the BOP's alleged failure to properly screen or search inmates entering the special housing unit (SHU) and SHU recreation cages to ensure that they did not have any weapons. <u>Id.</u> at *4 (opinion attached). The SHU post orders mandated that inmates were to be handcuffed, pat searched, and screened with a handheld metal detector before going out to recreation; correctional officers had to handcuff inmates from behind before the inmate exited his cell; and correctional officers had to remain in the recreation area and never leave the inmates unsupervised. <u>Id.</u> The SHU post orders further stated:

> '[p]ost orders are issued as guidelines for the officers assigned to this post and are not intended to describe in detail all of the duties assigned to this post. Officers assigned to this post are expected to use their initiative and good judgment in all situations covered in these post orders.'

<u>Id.</u> at *5 (quoting Doc. 15-3, p.4).

Relying on the post order that states "'expected to use their initiative and good judgment[,]'" the district court found that the post orders did not "mandate a specific course of conduct for the officers to

abide by in performing searches of the inmates. Rather the post orders provide an element of discretion and judgment." Id. (quoting Doc. 15-3, p.4). Here the post orders Middleton relies upon contain similar language: "[a]ll staff are expected to exercise and use good judgment while performing their duties" and "[e]ach officer assigned to this post is expected to exercise good judgement (sic) and make sound decisions in any and all situations." (Lyons Decl. (Ex. 3 SEALED), Att. 6 (General Post Orders) at 1 & (Special Instructions Post: General Population Housing Units).) As such, the post orders and special instruction for general population housing units in this case permit discretion and choice, thereby meeting the first element of the discretionary function test.

To the extent Middleton is attempting to argue that Officer Walters could not see inmate movement from the office, such argument is unavailing because he is relying upon diagrams he drew, which have not been authenticated. In his declaration, Middleton concludes Officer Walters could not see "all avenues of approach that inmates could use to enter Unit 2A through the outer and inner doors of the sally port while

[he] was in the unit office." (Doc. 56-2 (Middleton Decl.) at 6, ¶29.) To support this conclusion, Middleton is relying on two of his own drawings, which have not been authenticated and thus, are inadmissible.

Next, Middleton has not because he cannot cite one BOP policy, program statement, or any document that specifically states a course of action with respect to inmate work assignments and Smith being placed into food services. (Doc. 55 at 9-10.) Indeed, the BOP Program Statement 5251.06 regarding inmate work and performance pay provides "[t]he inmate's unit team ordinarily makes work and program assignments." (Doc. 51-1 (Nau Decl.) Att. 2 at §545.23, p. 4 (page 25 of 35).) There is no specific direction on how the unit team is to make work and program assignments. As such, making inmate work assignments is discretionary and has an element of judgment, meeting the first element of a discretionary function exception.

Middleton cites BOP Program Statement 5500.14, relating to post orders in housing units, which provides "inmates do not have any authority over other inmates" and "staff are responsible for supervising inmates." (Doc. 55 at 9; Doc. 56.2 at 22.) One of the flaws with this

8

argument is how these statements have anything to do with BOP staff making inmate work assignments. Additionally, there is no specific directions on how staff are to supervise inmates, demonstrating such supervision is discretionary. Finally, Middleton admits he was supervised. (Doc. 56 (Response to Defendants' SMF) at ¶13.)

Next, Middleton cites a BOP Program Statement that deals with conducting official counts and BOP Program Statement 5251.06 relating to how a supervisor computes how many hours an inmate works and the pay to be awarded to the inmate. (Doc. 55 at 9-10.) Neither of these BOP Program Statements mandate a specific direction about making inmate work assignments. Indeed, as noted above BOP Program Statement 5251.06 lacks specific direction about making inmate work assignments.

Finally, Middleton relies on the General Post Orders claiming it states crew kits are "to make sure that inmates are in the right place at the right time for work assignment." (Doc. 55 at 10.) However, the General Post Orders do not state what Middleton claims. Rather, the General Post Orders state "Crew Kits assist staff in maintaining

9

accountability of inmates assigned to them."  (Lyons Decl. (Ex. 3 SEALED), Att. 6 (General Post Orders) at 11.)  Moreover, as previously argued, the General Post Orders are discretionary and premised with "[a]ll staff are expected to exercise and use good judgment while performing their duties."    (<u>Id.</u> at 1.)

In conclusion, the BOP staff, including Officer Walters, had discretion to carry out the directive to monitor inmate traffic during the 90 minute movement.  Similarly, BOP staff had discretion in making inmate work assignments.  As such, the first prong of the discretionary exception function is met here.

It appears Middleton failed to oppose how the United States does not meet the second prong of the discretionary function exception.[2] (Doc. 55.)  As noted in the United States principle brief, the second step in the discretionary function analysis is whether the conduct "is of the

---

[2] Rather, it appears Middleton argues that there is no rule that exempts the United States from liability whenever an inmate attacks another inmate.  (Doc. 55 at 10-12.) The United States agrees that there is no blanket rule that exempts it from liability whenever an inmate attacks another inmate, which is why it argued it was exempt from liability due to the discretionary function. (Doc. 52.)

kind that the discretionary function exception was designed to shield." Berkovitz v. United States, 486 U.S. 531, 536-37 (1988).

Here, Middleton challenges the way Officer Walters monitored inmate traffic in and out of the unit on January 6, 2012, and the way inmate work assignments are handled. (Compl. (Doc. 1) ¶¶23, 25, 37-38.) The BOP general post orders and special instructions for general population housing units are based on considerations of public policy because the intent of such orders are to "assist staff in their daily work assignment and to fulfill the mission of the Federal [BOP] and FCI Allenwood." (Lyons Decl. (Ex. 3 SEALED), Att. 6 (General Post Orders) at 1 of 33.) Further, they focus on "maintenance of security in the institution as well as accountability and control of all inmates." (Id.) These policies are consistent with public policy concerns because the BOP should be given deference in executing its policies to maintain institutional security. See Bell v. Wolfish, 441 U.S. 520, 547-48 (1979)(holding prison administrators should be given deference in implementing and executing its policies relating to internal discipline and maintaining institutional security); Whitley v. Albers, 475 U.S. 312,

321-22 (1986)(finding prison officials have discretionary power over the safety of the institution they operate).

Likewise, the BOP's program statement relating to inmate work is grounded in public policy. According to BOP Program Statement 5251.06, the purpose of "the work program [is to ] . . . [r]educe[] inmate idleness, while allowing the inmate to improve and/or develop useful job skills, work habits, and experiences that will assist in post-release employment." (Doc. 51-1 (Nau Decl.) Att. 2 at §545.20, p. 1 (page 22 of 35).) Consequently, the BOP policies satisfy the second element of a discretionary function test. As such, this Court lacks subject matter jurisdiction over Middleton's FTCA claim, which should be dismissed.

II. **Alternatively, summary judgment should be entered in the United States' favor because the undisputed record demonstrates that it did not breach any duty owed to Middleton.**

Alternatively, the United States argued in its principle brief that it was entitled to summary judgment because there was no evidence that it breached a duty to Middleton. In opposition, Middleton argues the BOP policies "themselves attest to the foreseeability of the injury that befell Middleton." (Doc. 55 at 13.) Tellingly, Middleton failed to

support this blanket conclusion with any analysis of how the BOP policies alerted BOP staff that Smith would attack Middleton.

Middleton admitted that the day Smith attacked him (January 6, 2012), Smith approached him when he returned from work and Smith "demanded that [Middleton] put him back on the Bakery Roster." (Doc. 56-2 (Middleton Decl.) at ¶22.) Middleton further admitted he told Smith "that he did not work in Food Service and that he should talk to his Unit Counselor." (Id.) Yet, there is no record evidence that Middleton told any BOP employee about this conversation or Smith's demands. Additionally, there is no evidence Middleton sought protective custody.

Middleton proffers no evidence that he told any BOP staff of Smith's demands or that Middleton may be in danger from Smith. As such, there is no evidence for a juror to conclude anyone at the BOP knew Smith posed a risk to Middleton. Thus, Middleton cannot demonstrate the United States breached a duty of care to him and it is entitled to summary judgment in its favor.

## V. Conclusion

For the above stated reasons, defendants' motion to dismiss or, in the alternative, for summary judgment should be granted.

                              Respectfully submitted,

                              PETER J. SMITH
                              United States Attorney

Date:   November 10, 2014            /s Melissa A. Swauger
                                                  MELISSA SWAUGER
                                                  Assistant United States Attorney
                                                  Attorney I.D. PA 82382
                                                  United States Attorney's Office
                                                  228 Walnut Street, 2nd Floor
                                                  Harrisburg, PA   17108-1754
                                                  Phone:   (717) 221-4482
                                                  Facsimile: (717) 221-4493
                                                  melissa.swauger@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TERRY MIDDLETON,** <br>       **Plaintiff,** | Civil No. 1:13-CV-1085 |
| v. | (Kane, J.) |
| **UNITED STATES OF AMERICA,** <br>    **et al.,** <br>       **Defendants.** | Filed Electronically |

### CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers. That on November 10, 2014 she served a copy of the attached

### REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

upon the Addressee listed below via the Court's computerized Electronic Case Filing system.

Addressee:
Marianne Sawicki
Attorney for Plaintiff
mariannesawicki@verizon.net

                                                              s/ Anita L. Long
                                                              ANITA L. LONG
                                                              Paralegal Specialist