IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRY MIDDLETON, | : | |
|     Plaintiff | : | |
| | : | No. 1:13-cv-01085 |
| v. | : | |
| | : | (Judge Kane) |
| UNITED STATES OF AMERICA | : | |
| Federal Bureau of Prisons, | : | |
|     Defendant | : | |

**MEMORANDUM**

Pending before this Court is Defendant's motion to dismiss or, in the alternative, motion for summary judgment (Doc. No. 113), and Plaintiff's motion to compel discovery (Doc. No. 116), motion to strike video tape under seal (Doc. No. 120), motion for judgment on the pleadings (Doc. No. 131), and motion for argument (Doc. No. 135). Defendant has filed briefs in opposition to Plaintiff's motion to compel and to strike (Doc. Nos. 124, 128), and Plaintiff has filed reply briefs. (Doc. Nos. 127, 130.) For the foregoing reasons, the Court will grant in part Plaintiff's motion to compel discovery, deny Plaintiff's motion to strike the video tape, and deny without prejudice Defendant's motion to dismiss or, in the alternative, motion for summary judgment and Plaintiff's motion for judgment on the pleadings and motion for argument.

**I.   BACKGROUND**

On August 15, 2016, the United States Court of Appeals for the Third Circuit issued an opinion affirming in part and vacating in part this Court's order dismissing Plaintiff's complaint for lack of jurisdiction. (Doc. No. 76-1.) The Third Circuit affirmed the dismissal of Plaintiff's negligent supervision claims for lack of jurisdiction. (Id.) However, the Third Circuit vacated this Court's "determination that it lacked jurisdiction to hear [Plaintiff] Middleton's failure to protect claim." (Id. at 2, 9.) Specifically, the Third Circuit remanded the above-captioned action

1

to this Court to: (1) "consider whether the Special Instructions and Specific Post Orders are advisory or mandatory"; and (2) consider whether a "negligent guard" theory - which could "take some conduct outside the discretionary function exception" - applies to this case. (Id. at 9.)

On April 12, 2017, the Court issued an Order granting Plaintiff's motion for limited jurisdictional discovery and reopened discovery to allow Plaintiff to conduct discovery limited to the above two issues on remand. (Doc. No. 112.) Plaintiff now seeks an order compelling Defendant to answer a number of interrogatories and requests for admissions propounded upon Defendant (Doc. No. 116), and an order to strike the video tape submitted under seal and in camera by Defendant, alleging that it has been altered to eliminate relevant portions. (Doc. 120.)

On June 13, 2017, Defendant filed a motion to dismiss, or in the alternative, motion for summary judgment. (Doc. No. 113.) The Court subsequently granted Defendant's unopposed motion for an extension of time, permitting Defendant to file a brief in support of its motion to dismiss or, in the alternative, for summary judgment within fourteen (14) days from the Court's disposition of Plaintiff's discovery-related motions. (Doc. No. 123.) Plaintiff subsequently filed a motion for judgment on the pleadings and motion for argument on his motion for judgment on the pleadings. (Doc. Nos. 131, 135.)

## II. DISCUSSION

### A. Motion to Compel Discovery

Plaintiff seeks an order compelling Special Investigative Agent (SIA) James Lyons to respond to four interrogatories. It is well-established that rulings concerning the proper scope of discovery and the extent to which discovery may be compelled are within the Court's discretion. See Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). The court's decision regarding the conduct of discovery, including whether to compel disclosure, will only be

disturbed on a showing of an abuse of discretion. See Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) provides for a broad scope of discovery. As a consequence, courts often – and appropriately – apply liberal treatment to discovery rules. See, e.g., Clements v. N.Y. Cent. Mut. Fire Ins. Co., 300 F.R.D. 225, 226 (M.D. Pa. 2014) (citing Great W. Life Assurance Co. v. Levithan, 152 F.R.D. 494, 497 (E.D. Pa. 1994)). Nonetheless, a "valid claim[] of relevance or privilege" operates to restrict a court's otherwise broad discretion under Rule 26(b)(1). McConnell v. Canadian Pac. Realty Co., 280 F.R.D. 188, 192-93 (M.D. Pa. 2011).

The interrogatories and SIA Lyon's responses/supplemental responses are as follows:

5.  In the case involving the beating of inmate Rico Woodland, you gave a deposition where you described that an officer during a controlled move the officer would typically observe inmates "coming in and out of the unit" and that "he can do that from within inside [sic], standing right in the sally port, or standing outside on the sidewalk," why do you take a different position, in this case?

Response: Objection. This interrogatory is outside the scope of the limited discovery permitted by this Court in its April 12, 2017 order. There is no indication that the alleged 2002 beating of Rico Woodland has anything to do with the two issues on remand.

Supplemental Response: Objection. This interrogatory is outside the scope of the limited discovery permitted by this Court in its April 12, 2017 order.
Without waiving this objection, without the question posed to me at the deposition and the deposition transcript, I cannot respond to this interrogatory. Further, I may not be taking a different position. Also, it is unknown whether the controlled move at issue was a 10 minute or 90 minute controlled movement.

7.  Was the Special Instruction that, "Unit Officers will not leave the unit doors unsupervised during movements" added subsequent to the 2002 beating of Rico Woodland?

3

Response: Objection. This interrogatory is outside the scope of the limited discovery permitted by this Court in its April 12, 2017 order. There is no indication that the alleged 2002 beating of Rico Woodland has anything to do with the two issues on remand.

8. Was the Special Instruction that "Unit Officers will conduct pat searches of inmates entering and exiting the unit in order to control conveyance of contraband," added subsequent to the 2002 beating of Rico Woodland?

Response: Objection. This interrogatory is outside the scope of the limited discovery permitted by this Court in its April 12, 2017 order. There is no indication that the alleged 2002 beating of Rico Woodland has anything to do with the two issues on remand.

9. Was the Specific Post Order that states, "After the unit has been released for the evening meal, conduct checks and shakedowns of inmate entering and exiting the unit to ensure no inmate(s) from other areas are present," added subsequent to the 2002 beating of Rico Woodland?

Response: Objection. This interrogatory is outside the scope of the limited discovery permitted by this Court in its April 12, 2017 order. There is no indication that the alleged 2002 beating of Rico Woodland has anything to do with the two issues on remand.

(Doc. Nos. 117 at 15-17; 124-1 at 6-7.)

Plaintiff's interrogatories five, seven, eight, and nine, stem from Sledge v. United States, 883 F. Supp. 2d 71 (D.C. Cir. 2012).[1] In Sledge, plaintiffs alleged that the officer's decision to stand on the sidewalk immediately outside unit 3A for the entire ten minute controlled move violated BOP post orders, which provided that during a controlled move, "a unit officer is required to 'continuously monitor inmate traffic within and outside of the units.'" Id. at 77 (quoting BOP post orders filed under seal). The court in Sledge noted that "[t]here is no directive [in the BOP post orders] that dictates exactly where a housing unit officer should position himself or herself during a controlled move." Id. The court further noted Lyons'

---

[1] Teresa Sledge and Andrea Henson, personal representatives of Rico Woodland a/k/a Rico Sledge, and Diane Sledge alleged that the United States negligently failed to detect and stop the assault on Woodland, which resulted in his death. Sledge, 883 F. Supp. 2d 75.

deposition "describing that an officer during a controlled move would typically observe inmates 'coming in and out of the unit' and that 'he can do that from within inside [sic], standing right in the sally port, or standing outside on the sidewalk.'" Id. (quoting Lyons Dep. 140:5-10 filed under seal).

In the instant matter, Plaintiff's position is that the Sledge case and the testimony given by Lyons in that case is of significant import with the issues currently on remand in this case. (Doc. No. 117 at 3.) Specifically, Plaintiff argues that before the Sledge case, the only post order in question was that the officer failed to monitor traffic within and outside the unit. (Id.) Plaintiff provides that unlike in the Sledge case, there were no special instructions that "Unit Officers will conduct pat searches of inmates entering and exiting the unit in order to control conveyance of contraband. Unit Officers will not leave unit doors unsupervised during movements. Staff will maintain a high level of visibility during moves which often tends to disrupt the opportunity of inmates bringing contraband in to the unit." (Doc. No. 127 at 2.) As such, Plaintiff avers that these interrogatories will establish whether these aforementioned instructions were added to set forth a specific course of action on how and where to monitor inmate traffic. (Id.)

Defendant maintains that these interrogatories are outside the scope of the limited discovery permitted by this Court. (Doc. Nos. 117 at 15-17; 124 at 4; 124-1 at 6-7.) With regard to interrogatory five, Defendant provides that without waiving the aforementioned objection, Lyons did respond to this interrogatory by providing that "without the question posed to him at the deposition and the actual deposition transcript [from the Sledge case] demonstrating exactly what Middleton was quoting from, he could not answer the interrogatory," and that "he may not be taking a different position [from his testimony in the Sledge case] and Middleton failed to

note whether he was referencing a ten-minute or ninety-minute move." (Doc. Nos. 124 at 4; 124-1 at 6-7.) Additionally, Defendant provides that Plaintiff's claim that Lyons testimony in <u>Sledge</u> is inconsistent with his sealed declaration in this case is disingenuous. Specifically, Defendant provides that Plaintiff's statement that in <u>Sledge</u> Lyons testified that the officer "was suppose[d] to be [outside] or either in the sally port" and in this case, "Lyons stated in his sealed declaration that Officer Walters did nothing wrong by opening the unit's doors for the evening meal and returning to his office," ignores the portion of Lyon's testimony in <u>Sledge</u> where he testified that during a ten-minute controlled move, an officer may observe inmates coming in and out of the unit from "inside [the office]." (Doc. No. 124 at 6.)

The Court will first address the relevance objection to these interrogatories. The Court concludes that the information sought by Plaintiff in these interrogatories is relevant to the claims on remand and thus is discoverable under Rule 26. The interrogatories request information regarding the implementation date of these special instructions and post orders in light of the <u>Sledge</u> case. This information is relevant to and probative of the two issues on remand: whether the Special Instructions and Specific Post Orders are advisory or mandatory; and (2) consider whether a negligent guard theory - which could take some conduct outside the discretionary function exception - applies to this case. Accordingly, Defendant's relevance objections to interrogatories five, seven, eight, and nine will be overruled.

Turning to Defendant's argument that Lyons has already answered interrogatory five, we find his answer to be insufficient. Lyons' supplemental answer to interrogatory five was, in part, as follows: "without the question posed to me at the deposition and the deposition transcript [from the <u>Sledge</u> case], I cannot respond to this interrogatory. Further, I may not be taking a different position." The Court finds this response insufficient for the following reason. Lyons'

6

rationale for not responding to this interrogatory is based on his assertion that he did not have the question and corresponding deposition transcript [from the Sledge case] before him when answering interrogatory number five. The Court finds this reason unavailing, especially given that Defendant now cites to the very question and deposition transcript in its oppositional brief that Lyons claims in his answer that he could not answer. Accordingly, Defendant will be compelled to provide responsive answers to interrogatory numbers five, seven, eight, and nine.

      **B.**     **Request for Admissions**

Plaintiff also seeks this Court to compel Defendant to respond to three requests for admissions. Federal Rule of Civil Procedure 36 authorizes a party to serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matter's within the scope of Rule 26(b)(1) relating to:

    (A) Facts, the application of law to fact, or opinions about either; and

    (B) The genuineness of any described documents.

Fed. R. Civ. P. 36(a)(1)(A)&(B). Rule 36 permits a responding party to object to any requests for admission but requires that "the grounds for objecting to the request be stated" and "a party must not object solely on grounds that the request presents a genuine issue for trial." Fed. R. Civ. P. 36(a)(5).

   The request for admissions and Defendant's responses are as follows:

> 2.    Admit or deny that the Special Instructions. General Population Housing Units at 6, which states, "Unit Officers will not leave unit entrance doors unsupervised during movements," was implemented subsequent to October 15, 2002.
>
> Response:    Objection. This request for admission is outside the scope of the limited discovery permitted by this Court in its April 12, 2017 order. Additionally, this request for admission is overbroad and seeks information about post orders in effect approximately 10 years before Middleton was attached by inmate Smith. Further, Middleton was provided a true and correct copy of the

special instructions for general population housing units and specific post orders for unit officers, which were in effect on January 6, 2012.

3. Admit or deny that the Special Instructions. General Population Housing Units at 6, which states, "Unit Officers will conduct pat searches of inmates entering and exiting the unit in order to control conveyance and contraband," was implemented subsequent to October 15, 2002

Response: Objection. This request for admission is outside the scope of the limited discovery permitted by this Court in its April 12, 2017 order. Additionally, this request for admission is overbroad and seeks information about post orders in effect approximately 10 years before Middleton was attacked by inmate Smith. Further, Middleton was provided a true and correct copy of the special instructions for general population housing units and specific post orders for unit officers, which were in effect on January 6, 2012.

9. Admit or deny that on January 6, 2012, that inmates walking up the sidewalk entrance to Unit 2A cannot see in the unit office unless they step off the sidewalk, onto the grass and peer in the window.

Response: Objection. This request for admission is outside the scope of the limited discovery permitted by this Court in its April 12, 2017 order. Without waiving such objection, the United States lacks knowledge or information sufficient to form a belief as to the truth of whether "inmates waking up the sidewalk entrance to Unit 2A cannot see in the unit office unless they step off the sidewalk, onto the grass and peer in the window."

(Doc. No. 124-1 at 13 – 22.)

The Court will overrule Defendant's objections with respect to request for admissions numbers two and three. The Court finds that these requests are not outside of the limited discovery permitted by this Court and are relevant and probative to the two issues on remand.

With regard to request for admission number nine, however, the Court finds that Defendant has sufficiently answered this request. Defendant has provided that it cannot admit or deny Plaintiff's request number nine because Defendant is not aware of any inmate stating that while walking up the sidewalk entrance to Unit 2A, he could not see in the unit office unless he stepped off the sidewalk. (Doc. Nos. 124-1 at 22; 124 at 10-11.) See Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., No. 88-9752, 1992 WL 394425 at *10 n.6 (E.D. Pa. Dec. 28, 1992)

8

(observing that a response to a request for admission "must admit, deny, deny in part and admit in part, or state that it is unable to admit or deny the statement."). Accordingly, Plaintiff's motion to compel Defendant to answer request for admission number nine will be denied.

### C. Motion to Strike

In his motion to strike, Plaintiff asserts that the entire video tape submitted under seal and in camera (Doc. Nos. 87, 88) should be stricken because the tape was altered to eliminate relevant portions - specifically, portions of the video that would have captured events at 5:24:15 p.m. (Doc. No. 121.) The video tape submitted by Defendant begins at 5:27:24 p.m. (Doc. Nos. 87, 88.) To be clear, Plaintiff is not alleging that the contents of the video tape have been altered in some way, but rather, is alleging that the beginning portion of the video tape which would show his attacker, Smith, entering Unit 2A from the outside walkway was removed or not included. (Id.) As such, Plaintiff seeks to have the entire video tape stricken.

To support this contention, Plaintiff attaches to his motion Defendant's supplemental responses to his first set of requests for admissions (Doc. No. 121, Ex. 1) and a memorandum prepared by Lieutenant Bryant (Id., Ex. 2). Taking the memorandum of Lieutenant Bryant first, it provides, in pertinent part, "A review of the CCTV camera (180)[2] 5:24:15 p.m., shows inmate Smith walking into the unit. On camera 180 5:27:25 p.m., system shows both inmates struggling in the sallyport on the floor of Unit 2A." (Id., Ex. 2.) Next, Plaintiff's request for admission number five states: "Admit or deny that on January 6, 2012, during the evening meal inmate Eugene Smith entered Unit 2A and attacked Plaintiff in the Sally Port." Defendant's supplemental response states: "Denied as stated in part and admitted within clarification in part. The United States lacks knowledge or information sufficient to form an admission or denial as to

---

[2] It is uncontroverted that CCTV camera 180 is an outside overhead camera above the walkway of the doors leading in and out of the sallyport area of housing unit 2A.

whether 'on January 6, 2012, during the evening meal inmate Eugene Smith entered Unit 2A.' It is admitted with clarification that in a January 6, 2012, Lieutenant Bryant prepared a memorandum, which states '[a] review of the CCTV camera (180) 5:24:15 p.m., shows inmate Smith walking into the unit.' The unit is not identified in the memorandum." (Id., Ex. 1.) Therefore, Plaintiff asserts that Lieutenant Bryant's memorandum proves that there was additional footage captured by camera 180 showing inmate Smith entering Unit 2A at 5:24:15 p.m. that has been cut from the video submitted by Defendant.

Defendant responds that Plaintiff's argument that the video was edited to allegedly remove the portion of the video where Smith got into an altercation with Plaintiff lacks merit. (Doc. No. 128.) First, Defendant provides that the times indicated by Lieutenant Bryant in his memorandum are approximations and to the extent any discrepancy of time between his memorandum and the video footage exists, the Court should rely on the video as the correct time. (Doc. 128 at 6.) Additionally, Defendant provides the declaration of S. Martin, a special investigative services technician at FCI-Allenwood, who declares that camera 180 would not determine when, or if Smith actually passed through the 2A sallyport, went through the door, and continued into housing unit 2A. (Doc. 128-1 ¶ 6.) This is because camera 180 only captures the walkway of the doors leading in and out of the sallyport area, and not inside the sallyport area itself. (Id. ¶ 8.) Finally, Defendant provides that it is uncontested that Plaintiff was attacked by Smith in the sallyport and the current video shows that at 5:27:23 p.m. when Smith and Plaintiff exit the sallyport and come into view of camera 180. (Doc. 128 at 4.)

Defendant's arguments miss the mark. Plaintiff is not alleging that Defendant removed the portion of the video where Smith got into an altercation with Plaintiff. Rather, Plaintiff is asserting that Defendant removed, or failed to provide, the portion of the video from camera 180

10

that would have shown Smith initially walking up to Unit 2A from the walkway at 5:24:15 p.m. as provided for by Lieutenant Bryant in his memorandum. Approximations aside, Lieutenant Bryant's memorandum clearly supports Plaintiff's contention that camera 180 showed inmate Smith walking into the unit.[3] Martin's declaration also confirms that camera 180 would show inmate Smith going from the outside walkway into the sallyport area of Unit 2A. (Doc. 128-1 ¶ 7.) However, the video submitted by Defendant begins at 5:27:24 p.m. and does not provide any footage at 5:24:15 p.m. when Lieutenant Bryant indicated that Smith could be seen walking into the unit.

However, the Court notes that other than the absence of those three minutes leading up to the time 5:27:24 p.m., there are no arguments that the actual contents of the video footage submitted under seal (Doc. Nos. 88, 89) was altered in any way. Indeed, the Court has viewed the video and there is nothing about the video that appears to be suspicious, such as a break in the sequence. See Jones v. Union Pacific Railroad Co., No. 12 C 771 , 2014 WL 37843, at *5 (N.D. Ill. Jan. 6, 2014). To the extent Defendant possesses or can obtain video footage from camera 180 that depicts the time from 5:24:15 pm to 5:27:24 p.m. on the date of this incident, Defendant is directed to submit the same under seal and in camera to this Court. Otherwise, because there is no evidence that the contents of the video footage was altered, the Court will deny Plaintiff's motion to strike.

---

[3] While Defendant provides in its supplemental response to Plaintiff's first set of requests for admissions that Lieutenant Bryant did not specify which unit Smith walked into in his memorandum, the Court finds little trouble in acknowledging that the unit referred to is 2A given that it is undisputed that camera 180 is an outside overhead camera above the walkway of the doors leading in and out of the sallyport area of housing unit 2A.

**III.    CONCLUSION**

Based on the foregoing analysis, Defendant shall answer interrogatory numbers five, seven, eight, and nine, and respond to Plaintiff's request for admissions numbers two and three, within fifteen (15) days of the date of this Memorandum's corresponding Order.  Plaintiff's motion to compel Defendant to answer request for admission number nine will be denied.  Plaintiff's motion to strike the video tape will be denied.  Based upon the Court's disposition of the discovery-related motions, Defendant's motion to dismiss or, in the alternative, motion for summary judgment (Doc. No. 113), and Plaintiff's motion for judgment on the pleadings (Doc. No. 131), and motion for argument (Doc. No. 135), will be denied without prejudice.  Within thirty (30) days from the date of this Memorandum's corresponding Order, the parties may file renewed dispositive motions.  An appropriate Order follows.